And we'll call the third case this morning, Pagans v. Commissionerof Social Security. Good morning. Cholo Solo is my name. Cholo, good morning. If I can reserve five minutes for rebuttal, please. Yes, sir. I would suggest that the way this matter has been handled by the agency is with a morass of confusion. And if I might, I may have confused this court in my answering brief in the circuit because I made reference to grid rule 204.00 in a counterargument, but thereafter the government filed an amended brief claiming that their reference to 204.00 was a typographical error. In any event, the ALJ makes reference to grid rule 204.00 in her decision. I don't think that was a typographical error. However, 204.00 makes reference to the residual functional capacity to do heavy work, which was not found in the case, and I'm not clear exactly why the ALJ made reference to it. There may have been confusion. There was confusion in the handling of this matter in that it was four and a half years from the date of the cessation to the ALJ decision. That really is. You're pointing to the interesting issue in the case, whether we should focus on or the administrative law judge should focus on the date of secession or the date that the judge rules. That issue was presented to me for the first time at the district court level by the government. I was surprised when they raised the issue that the only point in time that was under review was the point of cessation. I had never counted that contention by the commissioner in the past. It's a pretty interesting issue, and it's out there. I mean, there are cases out there on this and, frankly, go in both ways. That's why it's so interesting. They just didn't pull this out, I don't think. Well, that particular issue has to be reviewed within the purpose of the Social Security legislation. I know it's quaint in some circles these days, but this is beneficent social legislation. You're suggesting that you've always been relying on the rule being the date that the decision is made. Is that right? That is what I have always relied on. Is that what you had been expecting to occur in this case? Well, that's what I expected was under review, but the government indicated it was only up until the point of the cessation. There was a time. Let me follow up with Justice Garis's point, which is really what rule are we going to apply, given that there are disparate rulings from different courts in the country? You have to look to the purpose of the legislation. What is the purpose of this legislation? This is beneficent New Deal social legislation. Before we go, that's quite far back, and you can argue it, but before we get there, don't we have a ruling of the Social Security Administration, which is the acquiescence rule that we have to consider, and whether, as the Seventh Circuit did, and I think it's the Differed case, gave that ruling Chevron deference. And if we give it Chevron deference, your battle is very steep uphill. Differed is quite contrary to what the Social Security ruling is. Right. Differed was why there was an acquiescence ruling, I think. That's correct. The agency acquiesced only in the Differed circuit to the Differed court ruling. Okay. I think you're right, and I'll stand corrected, but there is a decision out of the Seventh Circuit. Is it Johnson v. Johnson? Johnson v. Johnson. Yes, Johnson, that considered the acquiescence rule. And I'm sorry I miscited the case, but it's Johnson out of the Seventh Circuit, which gave the acquiescence rule Chevron deference. And if we were to do the same, we'd have to pretty much come out the same way that the Johnson case came out and stated that the rule is the date of decision. I think this is – our case is distinguishable from Johnson for two reasons. One is my reading of Johnson indicated that Johnson actually returned to the workforce. May I interrupt you? Because I just want to stay with this one thing and just ask you this one question, and then I will step back, which is what deference should we give this ruling, this acquiescence ruling? Should we give it Chevron deference? Should we give it some other deference like Skidmore deference? What do we do with this? I really don't think it should be given any deference whatsoever. Oh, all right. How come? What is it an interpretation of? Who makes this interpretation? What public input is it? The statute and regulation. The interpretation of the word current. This was never put through the Code of Federal Regulations process of seeking comment before? But Chevron presupposes that agencies have a certain expertise dealing with the statutes they administer. What's the expertise that's being applied? We want to save the government money? Is that what the expertise is? No, they're theoretically familiar with the basic objectives of the statute, and they said, look, the statute requires, I think as the Seventh Circuit said, that a disability be continuous and consistent with that. We'll interpret current to mean at the time of cessation. Well, I can tell you there was a shift at some point in time. There was a time when the form for the reconsideration, cessation disability hearing officer had a provision for disability being started again. That apparently has been deleted. What is the purpose? What is the purpose of this? From Hagan's point of view, he is being charged with a $70,000 overpayment. I just want to follow your argument because I don't understand it. Because if the form at the time of cessation had a provision for the disability starting again, how is that different from what they say in this acquiescence ruling, which is that you can start, you can apply anew for a disability? There was no requirement for a new application in the past. This is some kind of new. Right, but isn't that relevant to the question? Absolutely. The statute precludes a claimant from more than 12 months of retroactive benefits from the date of the filing of the application. Now, how in the world could Mark Hagan's know that in October 2004 he should have filed a new claim? In November 2004 he should have filed a new claim. In December 2004 he should have. Aren't these arguments that you make to the district court with regard to whether or not there should be collection on his payments that he's received? That's not what's before us. He's entitled to the benefits from the time, if it's ruled on, that he again becomes disabled. He's entitled to those benefits. Now, there's a couple of different points of time when that could come up. One would be at the time he turns 50 because he jumps in the age category and the grid would direct the filing of the disability. One would be perhaps when he started mental health treatment in 2005. This is significant retroactive benefits to which this man should be due. And I don't concede that at any time he became able to go back to work. I'm not making that concession at all. This is a man that appeared without the benefit of counsel. He had severe cardiovascular, cerebrovascular disease. He had to relearn how to walk, how to talk, how to eat. I will concede that he's no longer bedridden, but I will not concede that at any time he was in a position where he could return to the workforce. Even if we use the date of secession just for purposes of getting a handle on this problem, that terminated a period of disability, if I read the regulations correctly. So under section 416, that provision states that no period of disability shall begin as to any individual unless such individual files an application for disability. In other words, isn't he required to file a new application for disability, given that his first period had already concluded by decision of the Administrative Office? I don't think it makes any sense to require a claimant out there. I agree with you, it doesn't make any sense, but it's there. It's a statute, and that's what it says. An application was filed. I mean, it was filed. It was on file. I think you have to stretch it to say this man, now four and a half years into the fact, has to file a new application. I don't think that makes any sense. So you're talking about the initial application that he filed? Absolutely. But that period of disability concluded, it was concluded, by an initial determination, I believe, of the Secretary. Res judicata, administrative res judicata, applies to the date of the agency, of the ALJ decision. Now, if you look at the way the agency handled this subsequent claim, you can see how totally confused they were by this. His date of last insurance was December 31, 2008. The ALJ decision was in early 2009. When we filed a new application, the agency refused to act on it, saying this has already been decided because res judicata applies before insurance. Res judicata applies after his insurance status. Mr. Stahl, you don't disagree that there had been an administrative decision terminating his period of disability? Of course not. I don't think it's correct. Under 416, isn't he required to file a new application once that decision is made? No, he's not. It goes to the case, the decision of the ALJ. This has to be done in a sensible way. You're dealing with people that are out there that need these benefits to pay their bills. They need to pay their rent. They need to buy groceries. This shouldn't be handled in some kind of hyper-technical, hyper-legalistic way. These are individuals that really need the benefits. I don't disagree with you on that point. I'm not sure that that resolves the statutory interpretation, but I can't disagree with you on that first point. Anything else? We'll get you back on rebuttal. You'll have to help me with pronouncing your name. Yes, it's Secha Oum. May it please the Court, my name is Secha Oum, and I'm here representing the Commission of Social Security. Your Honor, substantial evidence supports the Commission's decision that Hagen's medically improved and that his disability ceased on September 1, 2004. Ms. Oum, at the threshold, can you help us with Mr. Sola's contention that this isn't, in fact, a longstanding rule of the agency? It is, in fact, the longstanding rule of the agency. Where else would we look to find that other than the acquiescence ruling? Well, we would look to the interpretation of the Act itself, for one, and also we would look to Johnson v. Alfred. All right, where would we find that interpretation? Where has the agency laid out its longstanding policy on this question other than the acquiescence ruling? The acquiescence ruling was basically where we clarified our position on this because we recognized that the differed court's holding conflicted with our interpretation. So there's no other regulation or statement of policy that we would cite other than the acquiescence ruling? That is correct. So if we go with the acquiescence ruling, why should we view that as of sufficient formality? As Mr. Sola pointed out, it wasn't published in the Federal Register. Why should we view that as something to which we should give Chevron deference as opposed to, for example, the Department of Labor letter in Christensen or the customs ruling in Meade? Right. Isn't this more like those declarations? No. Actually, the Supreme Court has recognized that an agency's interpretation  Yes, exactly. Barnhart v. Bolton is the case. And that is actually a Social Security case. So in this matter, the But there they were very clear in Barnhart that they were talking about a longstanding agency interpretation. Now, here, if we don't have anything else we can look at to tell us this is longstanding, how are we to know that it meets the Barnhart criteria? Well, it is the agency's longstanding position, and also the agency's construction of the Act and the relevant sections that govern the termination of benefits is both a reasonable and permissible construction of the Act. Why look at it as a mere reaction to the Sixth Circuit case, the Differet case? Why isn't that accurate? I'm sorry. It's a mere reaction to a court of appeals decision. In fact, that's what prefaces the statement of the Department's position. We disagree with the Sixth Circuit's position. This is a statement that did not follow any notice or hearing or formalized process to arrive at a decision. So why is it entitled to Chevron deference, if any deference at all? Right. Well, as I mentioned, the Supreme Court has recognized that an agency's interpretation that hasn't been subjected to formal rulemaking. Do you agree with the – is it the Seventh Circuit that this is entitled to Chevron deference, even though it was not subject to any hearing, any notice, any publication? Yes, I do agree, in particular because the agency's construction of the Act is a very permissible and reasonable construction. But did the Seventh Circuit actually address this question? Because they didn't say they had an acquiescence ruling in front of them. They said they had a regulation in front of them. The – the Seventh Circuit agreed with the agency in that we construed the Act both reasonably and it was a permissible construction. Sure. They were looking at the regulation there, and they said, yes, you have a longstanding practice, and we're going to give you Chevron deference for that. It's consistent with the objectives of the statute. But it's not the same as having, as we do, an acquiescence ruling in front of us, and you're relying on an acquiescence ruling, and it isn't formal. Why should we give this informal provision the same effect that they gave to the regulation? As I say before, this is the agency's longstanding policy. If you were to look at the Act, you could see, in particular the section that governs determination of benefits, you could see that the agency's policy, it actually supports the agency's longstanding policy. Yeah, but we don't know where the agency's longstanding policy can be referenced. We know this acquiescence ruling exists. What about before that? Before that, I mean, that is correct. Basically what we have here is the acquiescence ruling. The terms now and current aren't defined by Congress. And the Supreme Court has stated that if a term is ambiguous, then the Court must look to see whether the agency's construction of the relevant provision in the statute. Now and current means that we should consider the time of the decision of the administrative law judge. Wouldn't that be fair? No, that is not the agency's. Now means now. That's not the agency's interpretation because if you read it, you could see that the language in the section refers to the cessation date and that the section must be read in the context of the cessation determination process. The section provides that benefits may be terminated if, A, there has been a medical improvement, and based on that medical improvement, then, B, the individual is now able to engage in substantial gainful activity. And when you read both Parts A and B together, you can see that now refers to Part A, and Part A refers to the medical improvement, not a different time in the cessation determination process. Back to the acquiescence ruling just for a minute and deference. If we grant deference to the acquiescence ruling, how much deference should we, I guess, view it as? I mean, there's Skidmore and other types of deference, I guess, on a range. I mean, what level of deference should we grant this? Respectfully, the agency's position is this should be entitled to Chevron deference because this is, like I mentioned, it's a long-standing policy. The Social Security Act is very complex, and the court in Walton recognized that. In particular, the issue in Walton was actually a ruling as well, and the court nevertheless gave that ruling deference. To Mr. Sala's point, do you think that a pro se litigant like Mr. Hagans was likely to understand if he ever became disabled during the pendency of this case that he would have to file a new application? Actually, in his initial notice, the initial determination of cessation, it indicated that if Mr. Hagans felt that he became disabled again, then he should come and speak to somebody at the field office, and that is an indication that he could have filed an application. Does the notice tell him that any payments made during the pendency of his appeal may have to be paid back to the Social Security Administration? Yes, it does. Actually, in both the initial determination and the reconsideration notice, Mr. Hagans was aware that if he elected to receive continuing benefits, that there would be a possibility of overpayment if he wasn't successful. May I ask you an issue that is not relevant necessarily to the appeal, but as a matter of background, why does it take four years for the Social Security Administration to resolve these cases? The administrative appeals process can be lengthy. It doesn't necessarily take four years in all cases. In this case, it involved a cessation determination, and there's actually an extra step involved there. Mr. Hagans had three hearings, two which were substantive. One with a disability hearing officer in 2007, and then in 2008 he appeared before the ALJ and represented, and she adjourned that hearing so that he could obtain representation. So in order to permit a thorough evaluation of these cases, because you have to keep in mind that he was found disabled at one point, I submit that the appeals process can be lengthy. Is there anything really wrong about considering intervening evidence of a medical condition so that the administrative law judge can make a more informed decision? Well, in this case, the ALJ did consider it. It works both ways. He could, for example, he could have two more heart attacks, and that would give you a more administrative law judge better information, or he can completely improve, and that would pretty much confirm the original decision. But you would be making a more accurate decision. That is correct, and it is the commissioner's policy that the ALJ will consider all the evidence in the record, as the ALJ did here. But nevertheless, the ALJ is required to confine the period of review to the cessation only. What's the point of considering intervening conditions and evidence? To see if it relates back, for example, to the condition, to his condition at the time of the cessation. But it wouldn't be enough to change the date of disability. If it relates back, if it turns out that the evidence speaks to the condition at the time of the cessation, it may. The statute appears to require that consideration. 423F says that the ALJ has to consider evidence, including new evidence concerning the individual's prior or current condition. I suppose that's right. Speak to us for a moment about this question of reclaiming the benefits that he received between the date of cessation and the date of the ALJ hearing. Yes. Do I understand correctly that the agency has authority to waive that under the statute and that that issue remains before the district court? Well, actually, it's premature right now because the agency has not issued a final decision on the overpayment yet. But you are correct in that the statute does recognize that an overpayment can occur in cases such as this and a claimant can seek a waiver if he can show that he was without fault, that he appealed his cessation in good faith, and that if recovering the overpayment would defeat the purposes of the act or go against good equities or good conscience. And just by way of background, what would be the agency's intention in cases like this? Is this a case that qualifies for waiver or not? I mean, every waiver case is considered on a case-by-case basis. But, yes, specifically, it is specifically in the act and in the section governing the termination of benefits. Is that a decision of the district court? The district court did not decide this issue. No, but generally, is it a decision that the district court makes or is that an application that's made to the agency? It is an application that is made to the agency, and it goes through the entire administrative appeals process. And if need be, the claimant can appeal it to the district court. Okay. Anything further? Well, I just wanted to point out that you did mention that the plain language of the act does require that a claimant file a new application for a subsequent period of disability when a period of disability ends,  which refers specifically to the date of cessation, and it must be read in the context of the whole cessation determination process. And the 1984 amendments that adopted the medical improvement standards specifically rejected the concept of presumed continuing disability. And, indeed, Hagans here always had the ultimate burden of proving that he was disabled based on not only his prior condition, but also that he continued to be disabled based on his condition current at the time of the cessation determination. And also I mentioned that acquiescence ruling states the agency's longstanding policy and states that a different policy will only apply within the Sixth Circuit. Johnson v. Apfel has upheld opposition. And in sum, limiting the period of view to the date of cessation is both a reasonable and permissible interpretation of the act and should be upheld. Thank you, Your Honors. Ms. Sloan, thank you very much. Mr. Saleh, you have five minutes rebuttal. Your Honors, with regard to the issue of relating back evidence that is subsequently acquired, I want to point out that mental health clinic treatment started, and it's in the record, August 2005, which is less than a year of the date of cessation. There had never been mental health clinic treatment before that, and the mental health clinic assessed a global assessment of functional GAF of 51, which is very low on the scale in the DSM-IV, and manifests significant non-exertional limitations from a psychiatric perspective. And I don't think it's unreasonable to relate that back in light of the fact that this man had to relearn how to walk, how to talk, and how to eat. The reason I ask for five minutes rebuttals, I want to ask that the Court please absorb Professor John Dubin's law review article, Overcoming Gridlock. That might take more than five minutes. I understand it's very complicated. I really do understand this, and I understand. Is it mentioned in your brief? It is. It addresses the question of what constitutes a, quote, significant number of jobs. But this is actually, isn't it part of what the experts testified to in the initial hearing? There was a vocational expert. However, the ALJ never gave any reasoning as to why any particular number is significant or not significant within the meaning of the statute. The jurisprudence of the circuit is that the ALJ must give reasoning for findings and conclusions. And I point to Burnett and Cotter with regard to that jurisprudential concept. Now, this ALJ never gave any reasoning. If you look at the gridlock law review article, like this Professor John Dubin goes into this question at length. This is not a simple issue. It's not, I know it when I see it. It's not ad hoc or gestalt because the grid was designed to avoid the ad hoc or gestalt methodology of an ALJ disarming case. The grid was designed to provide some uniformity. And I would suggest that one has to look at the numbers of jobs that a VE may testify to, a vocational expert may testify to, and compare it to the numbers of jobs that the grid anticipates indicating disabled or not disabled in terms of evaluating the cases. And the jobs that they can perform within their area. And the jobs that are available. With the exertional limitations, the non-exertional limitations and the age. Well, the ALJ did discuss its limitations, didn't he? Well, the question... I think he could stand and walk for about six hours and he had to sit for two hours with his feet on a stool or something like that. She got that completely confused. She said... But that was her decision, wasn't it? I understand that, but does that make any sense that he stands with his foot on a stool? Stand with your foot on a stool? It's confusion. I don't know whether she got this case confused with some other case, but it's certainly confusion. In any event... I read it that way. I read her as saying that it was four hours that he could work and that, in fact, she recognized that he had to put his feet on the stool. But nonetheless, even discounting the number of six-hour jobs that were available, there were enough other jobs that he could still do. Is there something wrong with that? The state agency review physician talked in terms of being on your feet for four hours. The ALJ said being on your feet for six hours but being able to sit for two hours. She got it mixed up. There's no question that she got this mixed up. In any event... She got it mixed up in her language, but in terms of the result, didn't she accommodate the fact that he had to have his feet up? Another typographical error. The result has to be arrived at through a reasoning process. Burnett, Cotter, and I would suggest the same reasoning process is applicable to the question of what constitutes significant or non-significant. The psychiatric evidence came in at the ALJ level. It was not reviewed at the state agency level. If it had been, they would have done a mental residual functional capacity assessment. They did not do this. All the ALJ did was routine, repetitive, simple. There was no insight into how this psychiatric limitation might impact on the number of jobs. Mr. Salove, thank you very much for your arguments. Ms. Holm, thank you very much. Very helpful, and the case will be taken under advisement.